944 F.2d 906
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Calvin HOOKS, Defendant-Appellant.
 No. 90-3955.
 United States Court of Appeals, Sixth Circuit.
 Sept. 18, 1991.
 
 Before KEITH and BOYCE F. MARTIN, Jr., Circuit Judges, and TAYLOR, District Judge.*
 PER CURIAM.
 
 
 1
 A jury convicted Calvin Hooks of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 and distribution of cocaine and a cocaine base, both in violation of 21 U.S.C. § 841(a)(1). On appeal, Hooks argues that his conviction is against the manifest weight of the evidence and therefore should be reversed. Because we reject Hooks' argument, we affirm.
 
 
 2
 On October 17, 1989, a grand jury named Hooks, along with two other individuals in a six-count indictment. At Hooks' trial, the government elicited testimony from five individuals. The government's main witness, FBI Agent James Finch, testified that while he was acting in an undercover capacity Maurice Presley introduced him to Mose Holley, and that Finch and Holley discussed the purchase of cocaine. On March 11, 1989, Holley, Hooks, and Presley met at Agent Finch's apartment to consummate the cocaine deal. Holley handed Finch two ounces of cocaine; Finch then attempted to pay Holley but was instructed to give the money to Hooks, which he did. Finch then discussed the possibility of purchasing a kilogram of cocaine with Hooks.
 
 
 3
 Finch further testified that on March 15, 1989, he met Presley and Holley at a local restaurant to discuss the sale of more cocaine. Thereafter, the three men drove to Hooks' home; Holley entered the premises momentarily and then returned to the car. Holley and Finch then drove to Holley's apartment where Finch produced $10,000 in cash. Finch instructed Holley that Presley would deliver the remaining money due. The two then proceeded to Presley's home where Holley gave Finch a kilogram brick of cocaine and received the remaining money from Presley. Finch testified that, the next day, he received a call from Holley in which Holley offered to sell Finch another three ounces of cocaine. Finch indicated to Holley that he really wanted "crack" cocaine rather than the powder. Holley instructed Finch to meet him at Hooks' house. There, Finch saw Hooks bag up three one-ounce plastic bags of cocaine. Finch gave $2,650 to Holley which Holley immediately handed to Hooks. This cocaine was subsequently cooked into "crack" cocaine.
 
 
 4
 The government also called Mose Holley, who had entered into a plea agreement, as a witness. Holley's testimony tended to collaborate much of Finch's earlier testimony. More importantly, Holley testified that he had obtained the one kilogram of cocaine that Finch had purchased from Hooks. Additionally, the government called Maurice Presley, an FBI informant, to testify. Presley collaborated Finch's testimony. Presley also indicated that he had personally witnessed Hooks giving Holley the two ounces of cocaine that Agent Finch purchased on March 11.
 
 
 5
 On appeal, Hooks argues that the jury's verdict finding him guilty of conspiracy to distribute and distribution of cocaine is against the manifest weight of the evidence and therefore must be overturned. In support of this argument, Hooks cites Tibbs v. Florida, 457 U.S. 31 (1982), where the Supreme Court held that the double jeopardy clause of the fifth amendment does not bar retrial of a defendant whose conviction was reversed as being against the weight of the evidence. Id. at 47. This decision provides little, if any support for Hooks' argument since it was the Florida Supreme Court, and not a federal court which reversed the defendant's conviction. Id. at 40-41. For Hooks' purposes, this decision only provides an instructive discussion as to the difference between an argument based upon the sufficiency of the evidence and one based upon the weight of the evidence.
 
 
 6
 The record reveals that Hooks did not file a motion for a new trial pursuant to Fed.R.Crim.P. 33 premised upon his argument that the jury's verdict was contrary to the weight of the evidence. Thus, we are precluded from exercising any meaningful review in this case and only review for plain error. FED.R.CRIM.P. 52(b). When considering a motion for a new trial based upon the weight of the evidence, district courts can "consider the credibility of the witnesses and the weight of the evidence to insure that there is not a miscarriage of justice. It has often been said that he/she sits as a thirteenth juror." United States v. Ashworth, 836 F.2d 260, 266 (6th Cir.1988). However, as Ashworth made clear, the court of appeals does not sit as a thirteenth juror to judge the credibility of witnesses nor do we reweigh the evidence. Id. Instead, we limit our review to whether the district court's decision regarding the motion for a new trial is a "clear and manifest abuse of discretion." Id.
 
 
 7
 Because Hooks failed to file a motion for a new trial based upon the weight of the evidence, in order for this court to engage in any meaningful review we would have to make credibility determinations and weigh evidence, all on a dry record. As we stated in United States v. Levinson, 405 F.2d 971 (6th Cir.), cert. denied, 395 U.S. 906 (1968), "we do not sit as a trier of fact and will not enter into a de novo consideration of the evidence." Id. at 985. Finding no plain error, the judgment of the district court is hereby affirmed.
 
 
 
 *
 The Honorable Anna Diggs Taylor, United States District Judge for the Eastern District of Michigan, sitting by designation